**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ATRIUM COMPANIES, INC. AND, | § | |
| CHAMPION WINDOW, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 11-CV-1288 |
| | § | |
| ESR ASSOCIATES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER
## ON PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED
## COMPLAINT AND FIRST AMENDED ANSWER

On December 2, 2011, the parties consented to proceed before a United States magistrate judge for all further proceedings, including trial and entry of a final judgment, under 28 U.S.C. § 636(c). (Docket Entry # 21). Plaintiffs Atrium Companies, Inc. ("Atrium") and Champion Window, Inc. ("Champion") recently filed a motion for leave to amend their complaint, for a second time, and to amend their answer to Defendant's counterclaim. (Plaintiffs' Motion for Leave to File Second Amended Complaint and First Amended Answer ["Plaintiffs' Motion"], Docket Entry # 39). Defendant ESR Associates, Inc. ("ESR") responded to that motion, and Plaintiffs have filed two replies. (Defendant's Response in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint and First Amended Answer ["Defendant's Response"], Docket Entry # 45); (Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint and First Amended Answer ["Plaintiffs' Reply"], Docket Entry # 49); (Plaintiffs' Supplement to Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion for Leave to File Second Amended

Complaint and First Amended Answer ["Plaintiffs' Supplement"], Docket Entry # 50).  After a review of the pleadings, the evidence provided, and the applicable law, it is **ORDERED** that Plaintiffs' motion is **GRANTED**, in part, and **DENIED**, in part.

**BACKGROUND**

This case stems from a contract dispute between the parties.  Atrium manufactures and distributes vinyl and aluminum windows and patio doors for residential homes and "light commercial applications."   (Plaintiffs' First Amended Complaint ["Complaint"] at ¶ 6). Champion is a subsidiary of Atrium that is located in Houston, Texas.[1]  (Defendant's Response, Ex. 4, Plaintiffs' Reply, Ex. B, collectively "Durham Report," at 3).   Champion previously operated a window manufacturing facility, and its windows were available "throughout the State of Texas."[2]   (Complaint at ¶ 6); (Defendant's Response, Ex. 3), (Plaintiffs' Reply, Ex. A), collectively "Patterson Report," at 1).  Defendant ESR Associates installs software programs for companies to "facilitate the flow of information between business functions."  (Complaint at ¶ 7).  The software programs implement "enterprise resource planning" which integrates business functions "such as finance, manufacturing, sales, and services."  (*Id*. at ¶ 7 ).  On January 23, 2009, Atrium and ESR entered into a "Master Agreement" which provided that Defendant "would render technical services to Atrium in connection with [its] information systems." (*Id*. at ¶ 8).  The parties further agreed that they would "enter into a separate acceptance confirmation agreement for each project" specific to any of Atrium's subsidiaries.  (*Id*. at ¶ 9).  On May 17, 2010, Atrium and Defendant entered into a "Project Contract" for ESR to implement the "Oracle E-Business Suite" software package for the Champion facility in Houston.  (*Id*. at 3-4).  It is that "Project Contract" which serves as the basis for Plaintiffs' complaints.

---

[1] Although Champion's "principal place of business" is Houston, Texas, it is a Delaware corporation. (Complaint at ¶ 2).
[2] Plaintiffs' expert, Joel Patterson, reported that the "Chamption manufacturing facility was later closed in large part due to what transpired with the Oracle implementation." (Patterson Report at 13).

Plaintiffs claim that when ESR proposed the project, it "represented that the benefits [of the software package] ... would include manufacturing planning[,] [] scheduling capabilities, inventory planning[,] [] tracking tools, and real time information to manage the business." (Complaint at ¶ 11). Once the project was underway, however, Plaintiffs allege that ESR failed "to meet crucial deadlines" and "failed to provide adequate consultants to render the services required throughout the Oracle Implementation." (Complaint at ¶¶18 – 19). Due to these failures, "numerous problems" arose when the Oracle implementation "went live" in November 2010. (*Id.* at 6). Among the problems Champion experienced were "[i]ncomplete shipments to customers," the "[i]nability to place orders and invoice for the proper amounts," "[n]o visibility of customer orders for manufacturing purposes," the "inability to track and value inventory accurately," and the "inability to track accounts receivable." (*Id.* at ¶ 20). Because of these problems, Plaintiffs claim that the Champion facility "lost significant productivity" and received "numerous and serious customer complaints." (*Id.* at ¶ 21). Plaintiffs also allege that they were forced to hire additional employees and another consultant to remedy the problems. (*Id.*). Finally, they contend that there has been a "significant increase in [] past due accounts receivable." (*Id.*). In response to these problems, Atrium withheld its final payment of $76,580 to ESR, under the Project Contract, and filed this lawsuit. (*Id.* at 6-7).

In their present Complaint, Plaintiffs bring claims for breach of contract, negligent misrepresentation, breach of warranty, "information technology professional negligence," and gross negligence. (*Id.* at 7-11). Plaintiffs also seek a declaratory judgment on the following: that "Atrium does not owe ESR th[e] final payment in the amount of $76,580"; "that ESR breached the contracts"; and that "Atrium is entitled to recover [] reasonable and necessary attorneys' fees." (*Id.* at 11-12).

Plaintiffs originally filed this case in the 164th Judicial District Court of Harris County, Texas, on February 21, 2011. (Docket Entry # 1 at ¶ 6 & Ex. A-1). On April 6, 2011, Defendant removed it to federal court on the basis of diversity jurisdiction, and subsequently filed a counterclaim against Plaintiffs, seeking the remaining contractual payment of $76,580, as well as attorneys' fees and court costs. (*Id.* at 3); (Docket Entry # 4 at 6-7).

On September 30, 2011, Plaintiffs filed an unopposed motion for leave to file their first amended complaint. (Docket Entry # 18). That was granted on December 12, 2011. (Docket Entry # 24). On June 18, 2012, the parties filed a joint motion to extend certain deadlines in the scheduling order. (Docket Entry # 37). The parties stated that they had been "actively engaged in discovery," but that, because of "the existence and amount of electronically stored information, the production of documents has been delayed." (*Id.* at ¶ 4). Because of those delays, the parties agreed to extend the pending deadlines for "amending pleadings, for Defendant's expert designations, and for completion of discovery." (*Id.* at ¶ 6). Previously, there had been no deadline to amend pleadings, but the parties agreed that a deadline of June 29, 2012, should be imposed. (*Id.* at 3). It was on that date that Plaintiffs filed the current motion, requesting leave to amend both their Complaint, and their First Amended Answer ("Answer") to ESR's counterclaim. (Plaintiffs' Motion). In this motion, Plaintiffs maintain that they do not wish to add new claims, but instead, to add new facts which they learned from their expert witnesses' reports. (*Id.* at 1). Plaintiffs also request permission to add, as an affirmative defense, that ESR's counterclaim is barred, because Defendant is not licensed to do business in Texas. (*Id.* at 1 & Ex. B at 3). ESR opposes Plaintiffs' request to amend the Complaint arguing that it is untimely, prejudicial, and futile. (Defendant's Response at 1). Defendant insists that, "[b]ecause Plaintiffs have had more than adequate time to investigate its claims and to change the factual basis and nature of its case," these amendments should not be allowed. (Defendant's Response

4

at 1-2). From a review of the pleadings, and the applicable law, Plaintiffs' motion is GRANTED, in part, and DENIED, in part.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 15(a), pleadings may be amended once as a matter of course before a responsive pleading is served, and thereafter by leave of court. *See* Fed.R.Civ.P. 15(a). The rule also provides, however, that such leave "shall be freely given when justice so requires," but "it is by no means automatic." *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.1981). In determining whether to grant leave to amend, trial courts consider the following factors: whether there has been (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) a repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, and (5) whether the amendment would be futile. *See id.*; *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). Leave to amend is entrusted to the sound discretion of the trial court, and such a decision is subject to reversal only for an abuse of discretion. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004); *Addington,* 650 F.2d at 666. However, "if the district court lacks a 'substantial reason' to deny leave, its discretion 'is not broad enough to permit denial.'" *Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985); *see also Smith,* 393 F.3d at 595.

**DISCUSSION**

Here, Plaintiffs have requested leave of court to amend their existing Complaint and their current Answer to Defendant's counterclaim. (*See generally* Plaintiffs' Motion). Plaintiffs contend that such leave should be granted, because they "do not attempt to offer an 'entirely new' factual basis for their claims or a change in theories of liability." (Plaintiffs' Reply at 4). Plaintiffs claim that the proposed amendments are based on additional facts which were obtained

5

through expert discovery, "specifically, the preparation of Plaintiffs' expert reports." (Plaintiffs' Motion at 1).

Indeed, after Plaintiffs filed their First Amended Complaint, they served Defendant with reports from two expert witnesses. (Defendant's Response at 2); (*See* Complaint). The first report, from Joel Patterson ("Patterson"), an expert in "the implementation of Oracle e-Business Suite" software, details the exact purported missteps that occurred during ESR's implementation of the Oracle program. (*See* Patterson Report). The other report, from Gary Durham ("Durham"), a CPA with "extensive experience providing valuation consulting," elaborates on the damages that Plaintiffs allegedly sustained as a result of Defendant's breach of contract. (*See* Patterson and Durham Reports). Based on these reports, Plaintiffs hope to add detail to their pending breach of contract claim.

*BR 150*

The most significant addition to Plaintiffs' Complaint is based on a document that Patterson identified as the "Business Process mapping document," or "BR 150." (Patterson report at 3). Significantly, there is no mention of BR 150 in Plaintiffs' pending Complaint. The proposed amendments, however, allege that the Project Contract required Defendant to create BR 150, "a detailed project plan" for the Oracle implementation. (Plaintiffs' Motion, Ex. A at ¶¶ 16, 33); (Patterson Report at 3). BR 150 purportedly outlined "Champion's business model," and listed 170 requirements that the Oracle project was to address. (Plaintiffs' Motion, Ex. A at ¶¶ 26, 38). In their proposed complaint, Plaintiffs claim that ESR did not meet 48 of the requirements listed in BR 150. (*Id.*).

*New allegations based on Patterson's report*

In addition to BR 150, Plaintiffs cite language from Patterson's report to expand on some of its existing allegations. For example, in the current Complaint, Plaintiffs name seventeen

6

"significant deliverables" that ESR "failed to provide."[3]  (Complaint at ¶ 19).  In Patterson's

report, however, he noted that ESR had established a "methodology" to execute the job.

(Patterson's Report at 3).  Patterson concludes that Defendant "failed to deliver on the contracted

obligations of the stated methodology" in ten "critical areas."  (*Id*. at 4).  Plaintiffs hope to

include these ten areas in their proposed complaint. (Plaintiffs' Motion, Ex. A at ¶ 20).  Those

include the following:

> "Insufficient testing of the system prior to Go-Live"; "Insufficient training of the
> Super User resources prior to Go-Live"; "Inadequate data conversion
> validation"; "Lack of issue identification and recommendations for resolution";
> "Lack of consistent and competent consultant staffing"; "Failure to follow
> agreed-upon Project Management procedures"; "Incomplete knowledge transfer
> to [the] Champion user community"; "Lack of key milestone signoff and User
> Acceptance documentation"; "Incomplete creation of User Productivity Kit
> scripts and videos"; and "Incomplete development of agreed upon deliverables."

(Plaintiffs' Motion, Ex. A at ¶ 20).

Further, in the existing Complaint, Plaintiffs allege that ESR "failed to provide …

[t]esting of all data conversion programs [and] … [a]ll training materials." (Complaint at ¶ 19).

However, in their proposed complaint, Plaintiffs claim that "[t]esting and training were

inadequate," and they include specific allegations of those failures that are taken directly from

Patterson's report. (Plaintiffs' Motion, Ex. A at ¶ 23); (Patterson Report at 7-8).

---

[3] Those "deliverables" include:

> "Order lines under target margin"; "[f]lat file export for gas optimizer"; "[m]onth end report
> discount report, customer list, open orders by cash customer, tax code report, sales by sales
> person, category report, series breakdown report, sales by sales person, and customer rebate
> report"; "[n]umber of windows by department head"; "[n]umber of windows produced versus
> shipped by day"; "[d]iscover report for ineligible suppliers"; "[s]creen order generation program";
> "[o]pen sales order conversion"; "[s]ales commission report"; "[o]rder management configuration
> document"; "[p]urchasing configuration document"; "[i]nventory configuration document";
> "[a]ccounting codes setup for purchasing and inventory"; "[r]eturns process"; "[t]echnical
> specifications for all conversion and development programs"; "[t]esting of all data conversion
> programs"; and "[a]ll training materials for modules."

(Complaint at ¶ 19).

In addition, Plaintiffs hope to add allegations that Defendant breached the contract because of the manner in which ESR structured its implementation team. (Plaintiffs' Motion, Ex. A at ¶¶ 21); (Patterson's Report at 5-6). Plaintiffs point out that "almost every member was an independent contractor," while Patterson's report opines that "a team should not be staffed with a majority of contractors due to: … [the] [l]ack of familiarity with the corporate methodology, available tools, and resources," as well as an "[i]ncreased risk of resource turnover," and a "[l]ack of vetting of the specific skill sets." (Patterson Report at 5-6). Finally, Plaintiffs hope to include in their complaint allegations based on Patterson's contention that ESR "should have maintained" certain "key documents" such as "signed requirements, training plans, [and] time sheets." (*Id.* at ¶ 22) (Patterson Report at 5-7).

*Damages*

Plaintiffs' proposed complaint also includes new, and more specific, allegations on their economic damages. This new specificity is derived from Durham's expert report. In their existing Complaint, Plaintiffs allege only that they "were forced to contract with another consultant to fix the problems caused by ESR's failed implementation." (Complaint at ¶ 21). In their proposed complaint, however, they name the two consulting firms that were hired. (Plaintiffs' Motion, Ex. A at ¶ 28). Plaintiffs also hope to add allegations tied to a second inventory that they performed. (*Id.* at ¶ 28); (Durham Report at 2 & 4). They claim that "Champion performed a second physical inventory in January 2011 that would not have been necessary if the Oracle Implementation had been properly configured and tested." (Plaintiffs' Motion, Ex. A at ¶ 28).

Finally, in their existing Complaint, Plaintiffs list their damages as

expenses incurred for temporary employees to assist with resolving the problems with the Oracle Implementation, loss in productivity at the Champion facility, customer complaints, increase in past due accounts receivable, costs to fix the

problems with the system and future expenses that will be required to resolve the
problems with ESR's Oracle Implementation.

(Complaint at ¶ 30).  In their proposed complaint, Plaintiffs have amended that recitation to

match the specific categories identified by Durham. (Plaintiffs' Motion, Ex. A at ¶ 40); (Durham

Report at 2).  They now list these damages as follows:

> (1) funds paid to [the consulting firms of] Red River Solutions and Kindrick &
> Luther; (2) increased production labor costs; (3) costs to perform a second
> physical inventory in January 2011; (4) increased payroll expenses in the billing
> department; (5) increased out-of-pocket and payroll expenses in the IT
> department; (6) inability to collect for products and services provided; and (7)
> refunds and discounts issued to customers.

(Plaintiffs' Motion, Ex. A at ¶ 40).

ESR complains that these additions will cause undue delay and prejudice, because

Plaintiffs have known about these facts since the lawsuit began, and because the new allegations

will impose additional discovery requirements. (Defendant's Response at 6-11).

*Undue Delay*

Defendant argues that the proposed amendments to the pending Complaint are untimely

because Plaintiffs were aware of these facts when they filed their Original Petition and their First

Amended Complaint. (Defendant's Response at 7).  Defendant claims that Plaintiffs' "lack of

information or failure to review documents does not warrant granting leave to amend." (*Id.*).

Although it is true that "'at some point, time delay on the part of a plaintiff can be procedurally

fatal,'" it is important to note that "Rule 15(a) does not impose a time limit." *Smith* , 393 F.3d at

595 (citing *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)).  Instead, the Fifth

Circuit has stated that, even when a request to amend is filed within the prescribed deadline, it

may still be "'untimely' in light of the procedural history and posture of the case." *Mayeaux v.

Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 427 (5th Cir. 2004).  An amendment

becomes "untimely," when the delay is *"undue"* because it "prejudice[s] the nonmoving party or

impose[s] unwarranted burdens on the court." *Id.* (emphasis in original). The Fifth Circuit distinguished between those amendments that propose alternative legal theories of recovery, which "generally should be permitted," and those that "fundamentally alter the nature of the case," which "may be denied if the circumstances warrant." *Id.* In *Mayeaux v. Louisiana Health Service and Indemnity Co.*, the Fifth Circuit determined that the plaintiff's proposed amendments "pleaded a *fundamentally different* case with new causes of action and different parties." *Id.* at 427-28 (emphasis in original). With that finding, the trial court's denial of leave to amend was affirmed, as the amendments would have "unduly prejudiced" the existing and newly proposed defendants. *Id.* at 427-28.

Here, it is clear that Plaintiffs filed their proposed amended complaint within the deadline agreed upon by the parties. (Plaintiffs' Motion, Ex. A). It is also clear that Plaintiffs have already been given the opportunity to amend once, and trial is only five months away. Given the posture of this litigation then, it appears that the amendments may be "untimely." *See Mayeaux*, 376 F.3d at 427. But to determine whether the timeliness of the amendments is also "undue," the critical question is whether it "prejudice[s] the nonmoving party or impose[s] unwarranted burdens on the court." *Id.*

*Prejudice*

ESR argues that the allegations relating to the mapping document, BR 150, create a new cause of action, or at a minimum, add a new theory of liability to Plaintiffs' pending claim. (Defendant's Response at 9-10). ESR insists that the discovery required to investigate BR 150 will cause prejudice, because it will be required to conduct "additional legal research, briefing and discovery on issues relating to whether that document constitutes a contract, whether it was part of the other agreements, whether that document could be breached and whether" it was, in fact, breached. (*Id.* at 9). ESR also claims that the proposed changes will require it "to find new

experts and/or have [its] experts re-review documents to address these new theories of liability."
(*Id.* at 10).

The Fifth Circuit has recognized that a "defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court." *Smith*, 393 F.3d at 596 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (alterations in original)). Here, however, all of Plaintiffs' proposed changes appear to relate back to the "Project Contract," to the parties' "contractual obligations," or merely to provide more detailed information on their previous allegations. (*See* Plaintiffs' Motion, Ex. A). Even Plaintiffs' proposed allegations relating to the mapping document state that BR 150 "is incorporated" in the Project Contract. (*Id* at ¶¶ 16, 26, 33 & 38). These allegations do not appear to create any new claims or add any new theories of liability. Further, although these allegations may require Defendant to conduct additional research and briefing, those are tasks to which ESR consented, implicitly, when it agreed to the June 2012 deadline to amend pleadings. (Docket Entry # 37). In fact, in ESR's response to Plaintiffs' interrogatories, which it filed on August 3, 2012, with the request to amend pending, it objected to eight questions on the basis that "discovery is still in its early stages and still ongoing." (Plaintiffs' Supplemental Reply, Ex. A at 3-5). As Defendant concedes that discovery is "still ongoing," the amendments to Plaintiffs' Complaint which relate to the original Project Contract would not prejudice ESR. And, although amendments that "fundamentally alter the nature of the case," may warrant denial of a plaintiff's request for leave, there is no evidence, or argument, that Plaintiffs' amendments here do so. *Mayeaux*, 376 F.3d at 427.

Defendant also argues that it will be prejudiced by Plaintiffs' proposed complaint because ESR has already filed two motions for summary judgment. (Defendant's Response at 11). The Fifth Circuit has "emphasized that the fact that a defendant has filed a motion for summary

judgment is significant in the determination whether a plaintiff's subsequent motion to amend is timely." *Little*, 952 F.2d at 846 n. 2. It explained that, "Much of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Id.* In this instance, however, Plaintiffs filed their request for leave on June 29, 2012, and Defendant filed its motions for summary judgment on July 16, 2012. (*See* Docket Entries 39, 43, & 44). Given the time between those filings, this does not appear to be a situation in which Plaintiffs attempted to change "their theory" based on a reading of Defendant's summary judgment motions. *See Little*, 952 F.2d at 846 n. 2. Instead, Defendant knew there was a chance that Plaintiffs' Complaint might be amended when it filed its summary judgment motions. For that reason, Defendant's argument that Plaintiffs' delay is undue because it has summary judgment motions pending is unavailing in this instance.

Because discovery is "still ongoing," and because these amendments will not prejudice ESR, there is no "'substantial reason' to deny leave" here. *Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985); *see also Smith*, 393 F.3d at 595. Plaintiffs' request to amend their Complaint is granted.

<u>Leave to Amend Answer</u>

Plaintiffs also seek leave to add, as an affirmative defense, that "ESR's counterclaim is barred ... because ESR is not licensed to do business in Texas." (Plaintiffs' Motion, Ex. B at ¶ 11). Although they do not cite the statute specifically, Plaintiffs apparently rely on § 9.051(b) of the Texas Business Organizations Code, which provides that:

> A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of

> action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

TEX. BUS. ORGS. CODE ANN. § 9.051(b) (2012).   Based on this statute, Plaintiffs hope to preclude any potential recovery by Defendant.   ESR, however, points out that the section holds an explicit exception that, "The failure of a foreign entity to register does not ... prevent the entity from defending an action, suit, or proceeding in a court in this state."   *Id.* at (c)(2).   ESR also argues that the amendment to Plaintiffs' Answer is untimely, prejudicial, and futile.   (*See* Defendant's Response).

*Undue Delay*

Again, although Plaintiffs' amendment has been filed within the deadline, "at some point, time delay on the part of a plaintiff can be procedurally fatal.'"   *Smith*, 393 F.3d at 595 (internal citations omitted).   In those cases, "the plaintiff bears the burden of showing the delay to be "'due to oversight, inadvertence, or excusable neglect.'"   *Id.* (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)); *see Gregory*, 634 F.2d at 203 (noting that the "burden [] properly shifts to the party seeking to amend where apparent lack of diligence exists."); *see also Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992).   Here, Plaintiffs offer no reason for their delay in adding this affirmative defense.   They claim only that the "amendments to the Answer are based on additional facts and investigation obtained through the course of this case." (Plaintiffs' Motion at ¶ 2).   Plaintiffs insist that, because "[t]he case is still in its early stages," the amendment "will not delay the progress of the case." (*Id.*).   The record shows, however, that Plaintiffs have been on notice of ESR's registration status since it first sued the company, on February 21, 2011.   (Docket Entry # 1 at ¶ 6); (Defendant's Response, Ex. 1 at ¶ 5).   In their Original Petition, Plaintiffs identified ESR as "an Ohio corporation," that "does not maintain a regular business in Texas and does not have a designated agent for service of process."

(Defendant's Response, Ex. 1 at ¶ 5).  For that reason, Plaintiffs' proposed affirmative defense cannot be attributed to any "oversight, inadvertence, or excusable neglect," and it appears to be "untimely."  *Smith*, 393 F.3d at 595 (internal citations omitted); *see Mayeaux*, 376 F.3d at 427. The Fifth Circuit has cautioned, however, that, "delay alone is an insufficient basis for denial of leave to amend," because to be "undue," the delay must also cause prejudice.  *Mayeaux*, 376 F.3d at 427.

### Prejudice

Now, more than one and a half years have passed, and Defendant has invested considerable time and effort in finding local experts, attending hearings in Texas, drafting pleadings, and conducting discovery.  Indeed, ESR claims that it has paid experts more than $36,000 at this point.  (Defendant's Response at 11).  Any amendment that could potentially cause Defendant to re-create these efforts, would not only be prejudicial, but also inefficient. *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962).  Because this change may prejudice ESR, and because Plaintiffs have offered no reason for their delay, the court finds the delay to be "undue."  For that reason, Plaintiffs' request for leave to amend their Answer is denied.  *See Wimm*, 3 F.3d at 139; *see also Rosenzweig*, 332 F.3d at 864; *Jamieson*, 772 F.2d at 1208; *Smith*, 393 F.3d at 595.

### Futility

Further, ESR has also pointed out that Plaintiffs' proposed amendment to its Answer would be futile.  Under Rule 13, of the Federal Rules of Civil Procedure, a "pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (a) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  FED. R. CIV. PROC. 13(a).  This rule "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of

common matters." *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962). In its counterclaim,

ESR seeks to recover the final unpaid invoice for the work it performed under the contracts upon

which Plaintiffs sue. (Defendant ESR Associates, Inc.'s First Amended Answer and Counter-

Claim, Docket Entry # 31). Clearly, the counterclaim arises out of the same "transaction or

occurrence" that forms the basis of Plaintiffs' lawsuit. *See* FED. R. CIV. PROC. 13(a). ESR's

failure to raise its counterclaim in this action, would bar any further attempt to recover on the

purportedly delinquent account. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1

(1974); *see also Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984). However,

it is unclear whether the Texas statute upon which Plaintiffs rely provides an exception to allow

non-registered businesses to bring their compulsory counterclaims when "defending an action,

suit, or proceeding in a court in this state." TEX. BUS. ORGS. CODE ANN. § 9.051(c)(2) (2012).

Unfortunately, the court has found no Fifth Circuit decision that addresses the Texas statute at

issue here. However, the Fifth Circuit did decide a case construing a Mississippi statute which is

strikingly similar to the one Plaintiffs' rely on. *Environmental Coatings, Inc. v. Baltimore Paint

and Chemical Co.*, 617 F.2d 110, 111 (5th Cir. 1980). The relevant Mississippi statute states

that,

> No foreign corporation transacting business in this state without a certificate of
> authority shall be permitted to maintain any action, suit or proceeding in any court
> of this state ... [but] [t]he failure of a foreign corporation to obtain a certificate of
> authority to transact business in this state ... shall not prevent such corporation
> from defending any action, suit or proceeding in any court of this state.

*Envtl. Coatings*, 617 F.2d at 111) (citing MISS. CODE ANN. § 79-3-247). The Fifth Circuit

decided that "this door-closing statute, [] does not deprive a defendant of the right to present

compulsory counterclaims and third-party complaints." *Id*. It is reasonable to conclude that the

Fifth Circuit would find that the Texas statute should likewise not "close the door" to ESR in this

instance.

Further, there is a case from this district which addresses an earlier version of the statute at issue here. *Kutka v. Temporaries, Inc.*, 568 F.Supp. 1527 (S.D. Tex. 1983). In *Kutka*, the owner of a franchised business sued the franchisor to prevent him from closing the business. *Id.* The defendant, a D.C. corporation that was not registered with the Texas Secretary of State, had filed a counterclaim in the lawsuit for breach of the franchise agreement. *Id.* The trial court was required to consider whether the defendant's "failure to obtain [such] certificate of authority" from the Secretary of State precluded a counterclaim. *Id.* The court concluded that, although it "could not grant affirmative relief to [the defendant] on its counterclaim until it obtains a certificate of authority from the State of Texas," it could "decide the issue and, should affirmative relief be deemed appropriate, withhold the entry of final judgment until such time as a certificate of authority has been obtained." *Id.* at 1533 & n. 9. Likewise, this court may "decide the issue" presented here.

Moreover, ESR has stated that "it has taken steps to register (and believes it is now registered) in Texas." (Defendant's Response at 11 n. 2). Once Defendant becomes registered with the Texas Secretary of State, the court will be able to enter a final judgment in its favor, "should affirmative relief be [] appropriate." *Kutka*, 568 F.Supp. at 1533 (S.D. Tex. 1983). It appears then that Plaintiffs' proposed affirmative defense would, indeed, be futile. Because futility allows a court to deny leave to amend pleadings, Plaintiffs' request to amend their Answer is denied. *See Wimm*, 3 F.3d at 139; *see also Rosenzweig*, 332 F.3d at 864; *Jamieson*, 772 F.2d at 1208; *Smith*, 393 F.3d at 595.

**CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiffs' motion is **GRANTED**, in part, and **DENIED**, in part. Plaintiffs are allowed to amend their existing Complaint, but not their existing Answer.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

**SIGNED** at Houston, Texas, this ____ day of September, 2012.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**